Dillon, J.,
dissents, and votes to affirm the order insofar as appealed from, with the following memorandum: There are three reasons why I disagree with the majority determination to reverse: (1) it misapprehends four separate factual aspects of the case that raise issues of comparative negligence, (2) it fails to correctly apply controlling precedent from the Court of Appeals as well as this Court, and (3) it effectively creates new law that has no basis in decisional authority. Each reason is discussed in turn.
The majority’s first misapprehension involves the direction *961 of travel of the defendants’ vehicle. Photographs of the intersection that are in the record irrefutably demonstrate that the intersection is more of a three-way intersection with Keith Lane, from which the defendant driver turned, being several yards to the west of the other three entry points. The photographs, which are as much a part of the record as any party’s deposition testimony, demonstrate that the defendant driver necessarily completed or virtually completed her left turn from Keith Lane and traveled through the three-way portion of the intersection in order to then reach the unmarked crosswalk where the injured plaintiff was walking. Any suggestion that the defendants’ vehicle was somehow “behind” the injured plaintiff at the time of the impact is a physical impossibility given the configuration of the photographed roadways. The accident could not therefore involve a vehicle traveling from behind the injured plaintiff, as the majority implies, but was necessarily more perpendicular to the injured plaintiff upon the car’s approach from her side. With the defendants’ vehicle’s headlights pointing toward the unmarked crosswalk as it approached essentially from the injured plaintiff’s side, the injured plaintiff must have been truly oblivious of her surroundings to have not seen the car at any time, as she admitted in her deposition testimony. Under these circumstances, a jury could easily and rationally assess to the injured plaintiff a percentage of comparative negligence, and this Court should not improperly usurp that fact-finding function.
The second fact misapprehended by the majority involves where the injured plaintiff was looking at relevant times. The majority notes that the injured plaintiff waited for the traffic light to be in her favor before leaving the curb to cross the highway. In doing so, however, the majority ignores the injured plaintiff’s admission at her deposition that, as she crossed the lanes of travel, she failed to look to her sides and instead looked only ahead of her. The injured plaintiff’s duty of care, even if vested with a right-of-way under Vehicle and Traffic Law §§ 1152 (a) and 110 (a), does not end when she leaves the curb but is, instead, a continuing one as she traversed across the three-lane roadway (see Schmidt v Flickinger Co., 88 AD2d 1068, 1069 [1982]; Counihan v Werbelovsky’s Sons, 5 AD2d 80, 83 [1957]). The Court of Appeals has held, under facts virtually identical to those here, that the award of summary judgment to a plaintiff in a pedestrian knockdown case is not appropriate where the plaintiff fails to look to the sides while in the process of crossing an intersection (see Thoma v Ronai, 82 NY2d 736 [1993]). This Court has also held — under almost identical facts of a plaintiff crossing a highway as the defend *962 ant vehicle made a left turn at the intersection — that summary-judgment was not appropriate where, as here, the injured plaintiff did not look to her sides while in the process of crossing (see Yi Min Feng v Jin Won Oh, 71 AD3d 879 [2010]). Here, the defendants’ vehicle approached the injured plaintiff from her side.
The third fact misapprehended by the majority is the injured plaintiff’s admission at her deposition that she never saw the defendants’ oncoming vehicle before the accident, even though the vehicle approached her from the side with its headlights on. In Lopez v Garcia (67 AD3d 558 [2009]), another case involving a pedestrian knockdown while the defendant’s vehicle turned into an intersection, there were triable issues of fact as to comparative negligence because the injured plaintiff stated in an affidavit that she did not see the defendant’s vehicle before contact with it. Here, the injured plaintiff failed to see what was there to be seen through the proper use of her senses (see Espiritu v Shuttle Express Coach, Inc., 115 AD3d 787 [2014]; Brandt v Zahner, 110 AD3d 752 [2013]; Colpan v Allied Cent. Ambulette, Inc., 97 AD3d 776, 777 [2012]; Topalis v Zwolski, 76 AD3d 524, 525 [2010]; Tapia v Royal Tours Serv., Inc., 67 AD3d 894, 896 [2009]).
The fourth fact misapprehended by the majority concerns the uncontested evidence that the injured plaintiff’s point of impact with the defendants’ vehicle was at the driver side door and side mirror. One can reasonably and logically infer from this testimony that the injured plaintiff walked into the side of the defendants’ vehicle after it had already entered and was traveling beyond the intersection on Montauk Highway’s eastbound lane. Such an inference is supported by the photographed configuration of the accident scene, requiring vehicles making left turns from Keith Lane onto Montauk Highway to negotiate the turn in order to then proceed to the general area where the accident occurred. Where plaintiff pedestrians have had impacts with the side of a passing vehicle, as here, many appellate decisions have upheld summary judgment and trial verdicts in favor of the defendant motorists, not the pedestrians, based partially or entirely upon the location of the contact with the side of the cars (see Rogers v City of New York, 52 AD3d 589 [2008]; Carrasco v Monteforte, 266 AD2d 330 [1999]; Moskowitz v Israel, 209 AD2d 676 [1994]; Fieldy v Weimer, 169 AD2d 961 [1991]). The point of the injured plaintiff’s contact alone, aside from any other facts or evidence, dictates the denial of summary judgment to the plaintiffs, and at least raises a triable issue of fact for the jury as to her contributory fault.
*963 Indeed, in awarding summary judgment on the issue of liability to a plaintiff pedestrian who struck the driver side of a moving vehicle, the majority fails to adhere to established New York jurisprudence. Clearly, the point of impact between the injured plaintiff and the defendants’ vehicle raises a triable issue of fact as to the injured plaintiff’s comparative fault in walking into the side of a passing vehicle while she, according to her deposition testimony, was singularly focused on what was straight ahead of her as she walked across a three-lane roadway, rather than being mindful of her broader surroundings.
In addition to the significant facts overlooked or misunderstood by the majority, the majority has misapplied controlling case law such as Thoma, Yi Min Feng, and Lopez by making distinctions that those cases did not involve vehicles approaching pedestrians from the rear. The majority’s position in this regard is faulty for two reasons. First, the premise that the defendants’ vehicle somehow approached from behind her is refuted by the uncontested configuration of the intersection, regardless of its point of initial origin. Second, the majority misconstrues Thoma, Yi Min Feng, and Lopez, as those cases were not determined by the direction of the cars involved but by the plaintiffs’ failures to be aware of their surroundings on trafficked roadways.
In addition to overlooking crucial facts and ignoring controlling precedent, the majority, in my view, creates new law that is untenable. In essence, the majority holds that as long as a pedestrian looks both ways and steps off a curb with the traffic light in his or her favor, the pedestrian is relieved of any further duty of care while crossing multiple lanes of traffic on a dark and rainy morning, without need to ever look again left or right, and be oblivious to one’s broader surroundings. That proposition is not now and never has been the law (see Thoma v Ronai, 82 NY2d at 736; Yi Min Feng v Jin Won Oh, 71 AD3d at 879; Lopez v Garcia, 67 AD3d 558 [2009]; Schmidt v Flickinger Co., 88 AD2d at 1069; Counihan v Werbelovsky’s Sons, 5 AD2d at 83). The majority also makes new law that pedestrians need not concern themselves with vehicles that make turns into intersections, so long as the vehicles initially originate from the rear of four potential entry points. In the area of pedestrian knockdown cases, the majority cannot reach the conclusion it reaches here without creating new law that violates clear and consistent appellate precedents that are to the contrary.
Accordingly, I respectfully dissent.